# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINKI SINGH,<br><br>Plaintiff,<br><br>v.<br><br>SUNVIR JOHAL, et al.,<br><br>Defendants. | Case No. 1:25-cv-00830-SAB<br><br>ORDER OF REASSIGNMENT OF THIS MATTER TO A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>(ECF Nos. 16, 18)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is the motion to dismiss filed by Defendants Dean Murphy, Esti Barak, and Lemoore Rangel (collectively, "Landlord Defendants"), as well as the motion for judgement on the pleadings filed by Defendants County of Madera, Daniel Lutz, Michael Murphy, and Manuel Frutos (collectively, "County Defendants"). (ECF Nos. 16, 18.) Following the briefing on both motions, the Court took the matters under submission. L.R. 230(g). Having considered the moving papers as well as the Court's file, the Court issues the following findings and recommendations recommending granting both motions.

## I.

## BACKGROUND

Plaintiff is Pinki Singh ("Plaintiff"), who at one time operated UTK Mart located in North Fork, California. (ECF No. 12, ¶ 3.) Defendant Dean Murphy ("Murphy") is the owner and landlord of the real property that at one time was leased to Plaintiff to operate UTK Market. (Id. at ¶ 10.) Defendant Esti Barak ("Barak") is the wife of Murphy and Defendant Lemoore Rangel ("Rangel") is Murphy's daughter. (Id. at ¶ 11.) Defendants Daniel Lutz ("Lutz") and

Michael Murphy ("M. Murphy") are employees of Defendant County of Madera (the "County") as sheriff officers. (Id. at ¶ 7.) Defendant Manuel Frutos ("Frutos") is an employee of Defendant County as a code enforcement officer. (Id. at ¶ 5.)

In August 2024, January 2025, and April 2025, Defendant Aron Johal ("Aron Johal")[1] told Plaintiff that his mother owned a business named North Fork Supermarket, and due to North Fork being a small town, Plaintiff's prices at the UTK Market "were too low" giving North Fork Supermarket competition. (Id. at ¶ 13.) Aron Johal told Plaintiff, "that if she did not raise her prices he was going to shut her place down." (Id.) Plaintiff did not take Aron Johal's comments seriously because she knew him as only a real estate agent. (Id. at ¶ 14.) However, Plaintiff alleges that Aron Johal's brother, Defendant Sunvir Johal ("Sunvir Johal") worked for Defendant County as manager of Environment, Health, and Safety Department, "who might be corrupt and capable of abusing his power or influence to make Aron's threats real." (Id.)

On May 12, 2025, Defendant Frutos allegedly, without a 24-hour notice, conducted an inspection of UTK Mart for the California Department of Tax and Fee Administration ("CDTFA"). (Id. at ¶ 15.) Frutos entered UTK Mart with CDTFA officers and stayed inside during their two-hour inspection. (Id.) "On information and belief Plaintiff alleges that Frutos made such entry into Plaintiff's UTK Mart at the request of Defendants Sunvir, Aron, Jasbir, and/or Pritam to fabricate building code violations to subsequently close Plaintiff's business and thus eliminate her as a competitor." (Id.)

On May 20, 2025, "Frutos went to Plaintiff's UTK Mart and shut it down to date on unspecified and thus fabricated building code violations." (Id. at ¶ 16.) "On May 22, 2025, of her own initiative and volition, Defendant Rangel contacted Defendant Frutos and, on information and belief, joined the initial plan described [above] and thereafter pressed Plaintiff to comply with Fruto's [sic] inspection and permit demands." (Id. at ¶ 17.) "Within days Defendants Barak and Rangel tried to arrange for County of Madera to post *factum* inspect

[1] In addition to the Defendants who bring the motion to dismiss and motion for judgment on the pleadings, Plaintiff has sued Sunvir Johan, Aron Johal, and Grewal Pritam, who have not appeared in this action nor has Plaintiff filed summonses returned executed. The Court will address this issue under separate order. Moreover, Plaintiff has sued Kaur Jasbir who has answered but not joined either of the motions. The Court will refer to these defendants only as necessary in the factual background.

Plaintiff's business and began badgering Plaintiff to allow County of Madera to do said inspection." (Id.)

On June 5, 2025, Plaintiff wrote to Defendants Barak and Rangel:

> Thank you so much for your help. But no, I don't want an inspection until the County of Madera, not you or [] Lemoore, provide me with the notice of the list of what I was supposed to fix and get permits for BEFORE my business was shut down. Please understand that Madera County shut my business down for fabricated violations and because of that to this day I do not know from them what they are. Neither you or I should be doing this backwards to save them from their conduct and damage they are causing me.

(Id. at ¶ 18 (backets in original).) Following, any demand for an inspection was paused for six weeks. (Id.)

On July 2, 2025, Defendant Rangel wrote to Plaintiff "asserting that Plaintiff had 5 days to provide Rangel with proof of her compliance with Defendant Frutos' after-the-fact inspection and permit demands." (Id. at ¶ 19.) Plaintiff responded,

> My place has been closed for business since the County of Madera shut it down for no legal reason. I occasionally go there to check on it, verify inventory, or remove merchandise as I did this morning with my mother but by no means does it mean that it is open for business. Thus what you noticed is in error. It is, and has been, closed for business since May 20, 2025.

(Id.)

"Unsatisfied, on information and belief Plaintiff alleges that Rangel directly or indirectly contacted, reported, or caused to be reported, to Defendant County of Madera, that Plaintiff's business was open for business so that County of Madera would harass and penalize Plaintiff, as it happened." (Id. at ¶ 20.)

On July 7, 2025, Defendants Lutz and M. Murphy entered UTK Mart "for approximately two hours [and] searched the premises and all its contents and packages, smelled, opened, and seized some of them, and said it [sic] would take them for evidence, issue infractions, and threatened misdemeanor charges." (Id. at ¶ 21.) Afterward, Lutz and M. Murphy questioned people in the parking lot "to ask them if they knew if Plaintiff's UTK Mart was opened and all members of the public who knew told them it was closed and had been closed for weeks." (Id.)

"On information and belief Plaintiff alleges that Lutz's and Michael Murphy's July 7, 2025" entry into UTK Mart "was instigated, or made at the request of one or more named Defendants herein, who . . . may have mistaken [UTK Mart] to be open to the public . . . ." (Id. at ¶ 22)

On July 11, 2025, Plaintiff wrote to Defendants Murphy, Barak, and Rangel "that Madera County had illegally closed [Plaintiff's] business on undescribed [sic] and thus fabricated building code violations as alleged [above], and that such had been criminally done to eliminate her as a competitor to the North Fork Supermarket . . . ." (Id. at ¶ 23.) On July 18, 2025, Defendants M. Murphy and Barak went to Madera County to schedule an inspection of Plaintiff's business for July 23, 2025, . . . to which Plaintiff had forcibly consented to avoid bankruptcy and to lessen the emotional and physical damage the illegal and criminal closure of her business had caused her." (Id. at ¶ 24.) On July 26, 2025, Defendant Rangel notified Plaintiff that such inspection had been attempted instead on July 25, 2025, but was unsuccessful because Plaintiff's business was locked and to do such inspection as rescheduled Rangel "demanded that Plaintiff immediately provide her with a key to her business." (Id. at ¶ 25.) Plaintiff told Rangel that she would not provide her with a key to her business, nor did she authorize Rangel or anyone else to inspect it." (Id. at ¶ 26.)

On July 29, 2025, "Rangel, like Frutos, fabricated laws, building codes, and even a lease, to force that desperately needed post *factum* inspection, so that the co-defendants could more credibly fabricate their dreamed up building code violations." (Id. at ¶ 27.) Rangel said: "[W]e feel [] obligated to allow the inspection to go forth as scheduled for Wednesday, July 30, 2025 between 9:00am and 5:00pm. [¶] Should you fail to provide access to the property we will have a lock smith make a duplicate key and we will proceed with other legal remedies as allowed by law." (Id. (brackets in original).) Plaintiff responded, "If you enter my place or change the locks, I will sue you and anyone else involved (including, and unfortunately, also my dear friend Dean for whom you are now acting) for, among other things, forcible entry, trespass, invasion of privacy, and intentional infliction of emotional distress." (Id. at ¶ 28.) Plaintiff's response stopped the inspection "but sparked the wrath of Rangel, Barak, and Dean Murphy to evict Plaintiff in retaliation . . . and thus accomplish and consummate the initial competitor

elimination plan in a town run by a corrupt government, criminals, and despotic landlords – Dean, Esti, and Rangel – who with their retaliatory 60-day notice permanently closed Plaintiff's business which plan and goal they originally, or mid-way, agreed or joined to achieve." (Id. at ¶ 29.)

On July 9, 2025, Plaintiff commenced this action. (ECF No. 1.) Following the appearances and answers of certain defendants, Plaintiff moved for leave to amend, which was opposed. (ECF Nos. 7, 10.) On October 15, 2025, the Court granted Plaintiff leave to amend and directed the Clerk to file Plaintiff's first amended complaint. (ECF Nos. 11, 12.) In her first amended complaint, Plaintiff brings six causes of action: 1) violation of the Sherman Act, 15 U.S.C. § 1; 2) violation of the Cartwright Act, Cal. Bus. & Prof. Code §§16720-70; 3) unfair competition law, Cal. Bus. & Prof Code § 17200 *et seq.*; 4) unreasonable seizure, under the Fourth Amendment; 5) conspiracy to violate the Sherman and Cartwright Acts; and 6) aiding and abetting to violate the Sherman and Cartwright Acts. (ECF No. 12, pp. 8-12.) On November 17, 2025, the Landlord Defendants filed their motion to dismiss, and on November 25, 2025, the County Defendants filed their motion for judgment on the pleadings. (ECF Nos. 16, 18.) Both motions have been fully briefed (ECF Nos. 19, 21, 22, 23), and the Court took the matters under submission without a hearing. (ECF No. 20); see L.R. 230(g).

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In

assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Id. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has discussed that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732, citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

The applicable standard for a motion under Rule 12(c) is functionally identical to the standard for a motion to dismiss under Rule 12(b)(6). Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

## III.

## DISCUSSION

In their motion to dismiss, Landlord Defendants first argue that as private parties they are not subject to a § 1983 claim. Second, Landlord Defendants argue that Plaintiff has not stated a claim, nor could she, under the Sherman or Cartwright Acts. Last, Landlord Defendants offer that because Plaintiff's UCL, aid and abetting, and conspiracy claims rise and fall with her Sherman and Cartwright Acts claim, these claims fail as well. (ECF No. 16.)

In their motion for judgment on the pleadings, County Defendants first argue that they are immune to Plaintiff's Sherman and Cartwright Acts claims pursuant to the Local Government Antitrust Act of 1984 ("LGAA"). Regarding the UCL claim, County Defendants

argue that the County and its employees are immune as well but, in any event, Plaintiff fails to state a claim. Because aid and abetting and conspiracy attach to these claims, County Defendants contend that these claims must also be dismissed. County Defendants then run through that Monell liability could not apply in this matter, nor has Plaintiff alleged a Fourth Amendment claim. (ECF No. 18.)

For her part, Plaintiff summarizes her relevant allegations and goes through how, in her view, she has adequately pleaded all claims against all Defendants. Plaintiff also discusses her position on the term "color of law," as well as *per se* antitrust violations. (ECF Nos. 19, 22.)

Ultimately, the Court agrees with all Defendants. The Court takes the parties arguments in turn but in the order most logical to the Court.

**A. Immunity for County Defendants**

To begin, the Court clarifies that though Plaintiff brings a Sherman Act claim, a plaintiff alleging a civil anti-trust injury must bring such a claim through the Clayton Act, which provides the procedural mechanism for a private action. See 15 U.S.C. § 15 *et seq*. Because Plaintiff is proceeding *pro se* and because she is the nonmovant on the motions, the Court construes her Sherman Act claim as being brought procedurally correctly.

The LGAA may immunize local government entities from antitrust damage awards. 15 U.S.C. § 35(a). The LGAA reflects a Congressional determination that immunity from antitrust damages was necessary to "allow local governments to go about their daily functions without the paralyzing fear of antitrust lawsuits." Sandcrest Outpatient Services, P.A. v. Cumberland County Hospital System, Inc., 853 F.2d 1139, 1142 (4th Cir. 1988), quoting S. Rep. No. 593, 98th Cong., 2d Sess. at 3 (1984). The statute's language "is inclusive and not exclusive," and is to be broadly construed to apply to all aspects of local government entities' decision making and activities. Palm Springs Medical Clinic, Inc. v. Desert Hospital, 628 F. Supp. 454, 457 n.2, 458 n.3 (C.D. Cal. 1986). As such, the LGAA makes no distinction between a local government's "proprietary" and "governmental" activities. See Kern-Tulare Water Dist. v. City of Bakersfield, 828 F.2d 514, 522 (9th Cir. 1987). It applies even when the local government acts as a market participant. See id.; see also Town of Hallie v. City of Eau Claire, 471 U.S. 34, 40 (1985).

To that end, the LGAA provides that "[n]o damages, interest on damages, costs, or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. § 15, 15a, or 15c) in any claim against a person based on any official action directed by a local government, or official or employee thereof acting in an official capacity," or "from any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. §§ 35(a), 36(a). A "local government" is defined, in part, as follows:

> a city, county, parish, town, township, village, or any other general function governmental unit established by State law.

15 U.S.C. § 34(1)(A).

The County and its employees are explicitly covered by the LGAA. Thus, the Court finds that the County Defendants are immune from Plaintiff's Sherman Act claim under the LGAA.[2]

Regarding the Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq*., the California Supreme Court has determined that "[t]he actions of political subdivisions of the state . . . and the effects of such actions are outside the scope of the [Cartwright] act." Blank v. Kirwan, 39 Cal.3d 311, 323, 703 P.2d 58 (Cal. 1985). Perhaps rudimentary, a county is a political subdivision of the state. County of San Mateo v. Coburn, 130 Cal. 631, 636, 63 P. 78 (Cal. 1900). California courts have extended this principle to employees of counties and municipalities acting in their official and unofficial capacities. See People ex rel. Joseph Freitas, Jr. v. City and County of San Francisco, 92 Cal. App. 3d 913, 925-26, 155 Cal. Rptr. 319 (Cal. Ct. App. 1979) ("It strikes us as both illogical and unreasonable to hold that the City cannot be sued under the Cartwright Act, and then permit the Board members to be individually liable for the same immune conduct.").

Insofar as alleged, the Court also finds that County Defendants are outside the scope of the Carwright Act.

On these grounds alone, the Court finds that dismissal is appropriate of Plaintiff's Sherman and Cartwright Acts claims against County Defendants. Thus, the Court will

---

[2] Though there remains a limited avenue for municipalities to be liable for anticompetitive acts, Plaintiff's allegations do not appear to implicate this analysis. See Boone v. Redevelopment Agency of City of San Jose, 841 F.2d 886, 890 (9th Cir. 1988). In any event, as explained further herein, the Court finds that Plaintiff has alleged neither a claim under the Sherman Act or the Cartwright Act.

recommend granting the County Defendants' motion for judgment on the pleadings as to this aspect.

**B. Failure to State a Claim: Sherman and Cartwright Acts**

Both County and Landlord Defendants contend that Plaintiff's allegations do not state claims under either the Sherman or Cartwright Acts. In this vein, Plaintiff makes her arguments regarding the "*per se* violation standard," which the Court will address below.

Section 1 of the Sherman Act ("Act") provides in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1.

To state a claim under that provision, a plaintiff must

> plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition.

Jain Irrigation, Inc. v. Netafim Irrigation, Inc., 386 F. Supp. 3d 1308, 1313 (E.D. Cal. 2019), quoting Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008).

Broadly speaking, courts analyze such claims in two ways depending on the nature of the violation alleged. "Typically, the determination of whether a particular agreement in restraint of trade is unreasonable involves a factual inquiry commonly known as the 'rule of reason.'" United States v. Joyce, 895 F.3d 673, 676 (9th Cir. 2018). The rule of reason "weighs legitimate justifications for a restraint against any anticompetitive effects." Paladin Assocs., Inc. v. Mont. Power Co., 328 F.3d 1145, 1156 (9th Cir. 2003); see also Chicago Bd. of Trade v. United States, 246 U.S. 231, 238 (1918).

"The rule of reason inquiry, however, is inapplicable if 'the restraint falls into a category of agreements which have been determined to be per se illegal.'" Joyce, 895 F.3d at 676, quoting United States v. Brown, 936 F.2d 1042, 1045 (9th Cir. 1991). The *per se* rule, which "treat[s] categories of restraints as necessarily illegal, eliminates the need to study the

reasonableness of an individual restraint in light of the real market forces at work." Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 886 (2007). The types of agreements or practices recognized by courts as *per se* unlawful include "horizontal price fixing, division of markets, group boycotts, tying arrangements, and output limitations." Am. Ad Mgmt., Inc. v. GTE Corp., 92 F.3d 781, 784 (9th Cir. 1996). When a *per se* violation of § 1 of the Sherman Act is at issue, courts "do not require evidence of any actual effects on competition because [the] the potential for harm [is] so clear and so great." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1410 (9th Cir. 1991).

This inquiry under the Cartwright Act is similar.[3] The Cartwright Act is California's antitrust law, and the analysis under that statute "mirrors the analysis under Federal Law because the Cartwright Act . . . was modeled after the Sherman Act." County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1160 (9th Cir. 2001), citing Cal. Bus. & Prof. Code § 16700 *et seq*.

Whether to utilize a *per se* analysis or the rule of reason depends on the type of conspiracy alleged. Here, however, Plaintiff specifically asserts her antitrust claims exclusively on a *per se* theory of liability. (ECF No. 12, ¶ 32.) "The court will respect [Plaintiff's] decision and therefore confines its analysis to the question of whether the FAC adequately alleges a per se violation of the Sherman Act." Jain Irrigation, Inc., 386 F. Supp. 3d at 1314 (collecting cases for this principle).

In her opposition, Plaintiff asserts that she alleged "illegal price fixing" and "competitor elimination" as her examples of *per se* violations. However, Plaintiff's proffered caselaw in support of these examples, as alleged in the operative complaint, are not apposite. See SmileDirectClub, LLC v. Tippins, 31 F.4th 1110, (9th Cir. 2022) (observing that a regulatory board of dentists fell into the *per se* example where allowing "active market participants . . . to regulate their own markets free from antitrust accountability" poses a significant risk that those

---

[3] "The Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) generally declares that 'every trust is unlawful, against public policy and void.'" Blank, 39 Cal. at 320, quoting Cal. Bus. & Prof. Code § 16726. "For purposes of the act, the term 'trust' includes any 'combination of capital, skill or acts by two or more persons . . . [t]o create or carry out restrictions in trade or commerce.'" Id., quoting Cal. Bus. & Prof. Code § 16720, subd. (a). "In interpreting the Cartwright Act, [California courts] properly look to the Sherman Act and cases construing it: 'the Cartwright Act is patterned after the Sherman Act and both statutes have their roots in the common law.'" Id., quoting Marin County Bd. of Realtors, Inc. v. Palsson, 16 Cal. 3d 920, 925, 549 P.2d 833 (Cal. 1976).

entities might engage in "self-dealing" to promote their private interests), quoting North Carolia State Bd. Of Dental Examiners v. F.T.C., 574 U.S. 494, 505 (2015); Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 23 (1979) ("Not all arrangements among actual or potential competitors that have an impact on price are *per se* violations of the Sherman Act or even unreasonable restraints."); California Dental Ass'n v. F.T.C., 526 U.S. 756, 780-81 (1999) (cautioning courts to not use *per se* theory as basis for only a "quick look"). Thus, these cases offer little support for Plaintiff's position.

Even putting aside the issue of Plaintiff's reliance on a *per se* theory, the Court finds that Plaintiff has failed to allege facts supporting a conspiracy or that any such conspiracy was intended to affect trade or commerce among the several States or foreign nations. Plaintiff seemingly believes that by simply invoking the *per se* theory under the Sherman Act, she does not need to otherwise plead a Sherman Act claim. Not so.

The allegations do not plausibly support a conspiracy because Plaintiff has offered little allegations on who exactly were participants in the conspiracy (though we know the alleged aim), using at times conclusory factual allegations or indicating that she does not know what exactly occurred. (See, e.g., ECF No. 12, ¶ 14) (Defendant Sunvir Johal "might be corrupt and capable of abusing his power or influence to make Aron's threats real"); (see also id. at ¶ 22.) One example is that there are no allegations regarding whether Landlord Defendants actually joined a conspiracy with County Defendants. Another, County Defendants, as public employees, are not alleged to be competitors in the local smoke shop market (nor could they ever be). Furthermore, even assuming Plaintiff could allege facts to support a conspiracy, the allegations do not, and cannot, support a finding that the alleged conduct at issue necessarily affected commerce between the States or foreign nations. At most, the conduct describes a potential scheme located in Madera County, California only.

In sum, the Court finds that Plaintiff has not pleaded facts to state claims as to any Defendants under either the Sherman Act or the Cartwright Act. Despite Plaintiff's protest otherwise, her aid and abetting and other conspiracy claims are dependent upon stating these claims and do not shore up the deficiencies outlined above. Thus, these claims too fail as a

matter of law.

**C. Failure to State a Claim: UCL**

The Court agrees with Landlord Defendants that Plaintiff's UCL claim, as pleaded, is also dependent upon her Sherman and Cartwright Acts claims. See, e.g., Rose v. Bank of America, N.A., 57 Cal. 4th 390, 394-95, 304 P.3d 181 (Cal. 2013) (discussing predicates for the UCL).

Additionally, as County Defendants point out, the County is not a "person" as defined under the UCL. See Cal. Bus. & Prof. Code § 17201. And as to individual County Defendants, they are subject to immunity under Cal. Gov. Code §§ 821.6 and 820.2, which covers both activities within the scope of employment conducted in their official capacities as well as discretionary actions. Even giving Plaintiff's operative complaint every reasonable inference, at best it criticizes Officer Frutos' discretionary conduct instituting a code enforcement action, and Lutz's and M. Murphy's discretionary conduct in enforcing tobacco laws.

For these reasons, the Court will recommend granting this aspect of both motions.

**D. Failure to State a Claim: Fourth Amendment**

To start, there appears to be some confusion regarding the use of the term "color of law" and what it means to sue a party in either an official or unofficial capacity. As a Fourth Amendment claim may be brought through only 42 U.S.C. § 1983, which covers "color of law," the Court addresses this issue here (though the analysis applies throughout).

Section 1983 is a legal mechanism through which a plaintiff may bring a cause of action for the violation of a constitutional or other federal rights caused by persons acting under color of state law. Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under Section 1983, a plaintiff is required to allege that (1) each defendant acted under color of state law and (2) each defendant deprived him or her of rights secured by the federal constitution or federal law. Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021), citing Long, 442 F.3d at 1185; West v. Atkins, 487 U.S. 42, 48 (1988). Generally, each defendant must have personally participated in the deprivation of the plaintiff's rights. Jones, 297 F.3d at 934; see also Ewing v. City of Stockton, 588 F.3d 1218,

1235 (9th Cir. 2009).

"With a few exceptions . . . constitutional guarantees of individual liberty and equal protection do not apply to the actions of private entities." Edmonson v. Leesville Concrete Co., Inc, 500 U.S. 614, 619 (1991). "This fundamental limitation on the scope of constitutional guarantees 'preserves an area of individual freedom by limiting the reach of federal law' and 'avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'" Id., quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 936-37 (1982).

In Edmonson, the Supreme Court discussed the two-part test in analyzing if a private party may nonetheless be held to be a state actor. 500 U.S. at 619-20. First, courts inquire "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority." Id. at 620. Second, courts ask "whether the private party charged with the deprivation could be described in all fairness as a state actor." Id.

As to the Landlord Defendants, Plaintiff summarily states that "the actions of private parties become under color of law when they conspire with state officials to deprive others of constitutional rights." (ECF No. 19, p. 5.) Plaintiff offers nothing more, besides three case citations, to support this assertion applying to this case. The Court finds that the Landlord Defendants are not state actors nor did they act under color of law. The claimed constitutional right here is the Fourth Amendment's guarantee of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. Amend. IV. Though Plaintiff has alleged a scheme whereby she purports that the Landlord Defendants conspired with the County Defendants to begin a code enforcement process, Plaintiff has failed to allege any factual basis for any such conspiracy. Furthermore, Plaintiff has failed to allege any right or privilege the Landlord Defendants utilized in making any alleged code enforcement process happen. In other words, the allegations demonstrate at most that the Landlord Defendants acted as private individuals, even believing that they contacted the County Defendants for code enforcement. For example, simply calling the County for code enforcement does not transform a private individual into acting under color of law.

Furthermore, the Court also finds that it would not be in all fairness to describe the Landlord Defendants as state actors. That the Landlord Defendants utilized or based some of their actions on the laws of California again does not transform them into taking action *on behalf of the state*. Plaintiff's insistence otherwise is conclusory and therefore insufficient. Simmons v. Sacramento County Superior Court, 318 F.3d 1156 (9th Cir. 2003) (holding that a plaintiff could not bring a Section 1983 claim against a lawyer in private practice because such a person "was not acting under color of state law"); see Price v. Hawaii, 939 F.2d 702, 708 (9th Cir. 1991) (requiring more than "conclusionary allegations" to consider a private party a state actor for the purposes of § 1983).[4]

Because the Landlord Defendants are not state actors, the Court finds that they cannot be liable for any claim brought through 42 U.S.C. § 1983.

While Plaintiff takes the position that the Landlord Defendants were acting under color of law, Plaintiff takes the opposite position regarding the County Defendants (ostensibly to avoid their immunity defenses). The Court is not persuaded. Plaintiff offers a narrative that despite County Defendants acting within the scope of their jobs, they nonetheless acted as individuals. In support of this, Plaintiff cites to her conclusory allegations that these Defendants fabricated building code violations. Yet, Plaintiff does not provide even the most basic of information regarding which building codes were purportedly violated and how the County Defendants fabricated those. Furthermore, Plaintiff admits that she did not own the store but was leasing the property. As such, it is apparent that Plaintiff did not have an absolute right of exclusion of the property. Katz v. United States, 389 U.S. 347, 350 (1967) ("[T]he Fourth Amendment protects people, not places."). Last, at least one alleged inspection occurred, by Plaintiff's own allegations, while UTK Mart was still open to the public. (ECF No. 12, ¶ 15; see also id. at ¶ 24.) Thus, because UTK Mart was open to the public, any such entry on that date as alleged could not have been unreasonable.

---

[4] To be sure, a private party may be found to be a state actor when engaged, for example, in a conspiracy with another state actor. See Dennis v. Sparks, 449 U.S. 24, 28 (1980). But the Court has already found that Plaintiff has failed to allege any facts that would plausibly support a conspiracy. That Plaintiff merely states otherwise is again insufficient.

Plaintiff's conclusory allegations and assertions otherwise are insufficient to support that her Fourth Amendment rights were violated. Plaintiff has not offered allegations, beyond the conclusory, that would support that any County Defendants were acting outside the scope of their employment. Simply stating otherwise without well-pleaded factual allegations to support such an assertion is not enough. See Simmons, 318 F.3d 1156; Price, 939 F.2d at 708.[5] As such, the Court finds that the County Defendants are entitled to the immunities discussed above.

The Court also agrees with County Defendants that Plaintiff has not even suggested in her pleading that Monell liability would apply in this case. See Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).

**E. Leave to Amend**

Leave to amend should be denied. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a). In other words, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

The Court finds that any further leave to amend would be futile. Given the allegations in the operative complaint, the Court finds that Plaintiff will not be able to sustain claims under Sherman and Cartwright Acts even with any further factual allegations. Moreover, no further factual allegations would seem to support altering that the Landlord Defendants are not state actors that that the County Defendants are state actors (with the immunities that apply).

---

[5] Ironically for Plaintiff's position, if the Court were to find County Defendants were not acting in their official capacity, they would not be acting under color of law and therefore not subject to suit under § 1983.

Plaintiff's proffered reason for leave to amend is to include claims of substantive and procedural due process, equal protection, and takings under the federal constitution. Yet, for substantially similar reasons as to the analysis above, these claims too would fail given the factual allegations. See, e.g., United States v. Skrmetti, 605 U.S. 495 (2025) (equal protection with rational basis); Troxel v. Granville, 530 U.S. 57 (2000) (example of substantive due process); Lucas v. S.C. Costal Council, 505 U.S. 1003 (1992) (takings clause in regulatory context); Mathews v. Eldridge, 424 U.S. 319 (1976) (procedural due process).[6]

## V.

## CONCLUSION AND RECOMMENDATION

Because this matter was assigned to a magistrate judge only under the Court's previous Local Rule Appendix A, the Court DIRECTS the Clerk of the Court to randomly assign this matter to a district judge.

Based on the foregoing, IT IS HEREBY RECOMMENDED that Landlord Defendants' motion to dismiss (ECF No. 16) and County Defendants' motion for judgment on the pleadings (ECF No. 18) be GRANTED without leave to amend.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

**Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.**

/ / /

/ / /

[6] Plaintiff also seeks to include additional state law claims. However, without a federal claim, the Court declines to opine on whether Plaintiff would be able to state a claim under state law. This is so because without a federal claim, in this case, the Court would have no subject matter jurisdiction over the case.

The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 17, 2026**

STANLEY A. BOONE
United States Magistrate Judge